**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

SUSAN HAYES,                                        )
                                                   )      CASE NO.    1:09-cv-0647
                    Plaintiff,                     )
                                                   )
        v.                                         )      MAGISTRATE JUDGE VECCHIARELLI
                                                   )
COMMISSIONER OF SOCIAL                             )
SECURITY ADMINISTRATION,                           )      MEMORANDUM OF OPINION
                                                   )
                    Defendant.                     )

        This case is before the magistrate judge by the consent of the parties.  Plaintiff,

Susan Hayes ("Hayes"), challenges the final decision of the Commissioner of Social

Security, Michael J. Astrue ("Commissioner"), denying Hayes's application for a period

of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42

U.S.C. §§ 416(i), and for Supplemental Security Income ("SSI") under Title XVI of the

Social Security Act ("Act"), 42 U.S.C. §§ 423 and 1381(a).  This court has jurisdiction

pursuant to 42 U.S.C. § 405(g).

        For the reasons set forth below, the court VACATES the decision of the

Commissioner and REMANDS the case for further consideration in light of this opinion.

                            I.  Procedural History

        Hayes filed an application for DIB and SSI on March 10, 2005, alleging disability

as of February 2, 2005 due to fibromyalgia, pain, chronic fatigue, depression, and a

kidney infection.  Her application was denied initially and upon reconsideration.  Hayes

timely requested an administrative hearing.

Administrative Law Judge Salena Bowman-Davis ("ALJ") held a hearing on June 19, 2008.  Hayes, represented by counsel, testified on her own behalf at the hearing. Gene Burkhammer testified as a vocational expert ("VE"), and Herschel Goren testified as a medical expert ("ME").  The ALJ issued a decision on September 3, 2008, in which she determined that Hayes is not disabled.  Hayes requested a review of the ALJ's decision by the Appeals Council.  When the Appeals Council declined further review on February 9, 2009, the ALJ's decision became the final decision of the Commissioner.

Hayes filed an appeal to this court on March 24, 2009.  Hayes alleges that the ALJ erred because (1) the ALJ erroneously found Hayes not to be credible; and (2) the ALJ failed to give controlling weight to the opinion of Hayes's treating physician.  The Commissioner denies that the ALJ erred.

II.  Evidence

A.    *Personal and Vocational Evidence*

Hayes was born on July 6, 1960 and was 47 years old at the time of her hearing. She has a high school education and work experience as a cashier, salad prep worker, and customer service worker.  This work ranged from light unskilled work to light semi-skilled work.

B.    *Medical Evidence*

On December 23, 2003, Hayes underwent a cystopanendoscopic procedure to relieve groin pain.  Transcript ("Tr."), p. 193.  During the procedure, the surgeon removed a stent implanted during a previous operation.

Hayes quit her job at Lowe's Home Improvement Center ("Lowe's") on February

2

2, 2005, the date of the alleged onset of her disability.  On February 11, 2005, she appeared at the emergency room of the Cleveland Clinic Foundation ("Cleveland Clinic") complaining of acute abdominal pain, chills, nausea and diarrhea.  Tr. at 383-86. Hayes told the attendant that she had undergone fourteen abdominal surgeries beginning in 2001, that she needed surgery immediately, and that she was afraid of losing her job and her house.  Hayes's prescriptions at the time included Darvocet, Mobic, Tramadol, hyoscyamine, Efflexor, and Esclim, and she admitted then-current use of marijuana.  After an examination, she was discharged with an appointment to see a physician on a later day.

On February 24, 2005, Dr. Howard B. Goldman performed an operation on Hayes to remove a suture in Hayes's bladder left from an earlier operation.  Tr. at 201-02.  The operation was successful.  On March 15, 2005, Hayes reported "feeling 100% better," did not have any burning sensation, and was suffering no incontinence.  Tr. at 393.  The doctor discharged her with antibiotics and an appointment to see him in three months.  Tr. at 205.  Hayes reported to Dr. Goldman on April 11, 2005 complaining of abdominal pain.  An intravenous pyelogram found the urinary bladder to be normal.

On April 4, 2005, Hayes visited Jeffrey A. Chaitoff, M.D., complaining of pain in her back, neck, shoulders, and right hip.  Tr. at 240.  Dr. Chaitoff found tenderness to palpation along the spine at L7 and at the right bursa.

Hayes completed a Symptoms Report on April 27, 2005.  Tr. at 68-71.  Hayes alleged experiencing pain in her face, neck, shoulders, back, and torso; nausea; weakness; headache; emotional ups and downs; depression; and fever, and said she was suffering from a kidney infection and fibromylagia  On the same day, Hayes's

3

mother completed a Function Report.  Tr. at 72-79.  She reported that Hayes spent most of her time in bed, slept poorly, did not cook or do chores, and was cared for by her mother and her 13-year old son.  Hayes's mother also reported that Hayes did not take much care of her personal appearance; was depressed and anxious; could not sit, stand, walk, or lift without pain; and was easily stressed.  According to the mother, Hayes could no longer do such things as working at home or in the yard, biking with her son, and watching television.  Hayes was, however, able to interact with family and friends, and her social skills were intact.  The mother also said that Hayes banked via computer and went out only to see a doctor or to go grocery shopping for 30 minutes at a time, with her mother driving to and from the store and otherwise accompanying Hayes.  According to the report, Hayes had problems with attention and focus, and her son had to remind her to take her third pill of the day.  All of this, Hayes's mother asserted, was in sharp contrast to Hayes's behavior before her illness.

Hayes completed a Function Report on May 2, 2005.  Tr. at 87-94.  Hayes reported that she mostly slept, read, or watched television.  She bathed herself, and she occasionally cooked and did dishes and laundry, although her son or mother usually did these chores.  According to Hayes, weakness, fever, pain, headache, nausea, and dizziness prevented her from doing more.  Hayes also reported doing occasional food shopping every 8-10 days for about an hour and a half, but that such shopping usually required her to sleep the rest of the day.

On May 25, 2005, Michael Leach, Ph.D. ("Leach"), a clinical psychologist, evaluated Hayes for the Bureau of Disability Assessment ("the Bureau").  Tr. at 188-91. Hayes reported that she was a high school graduate who earned a degree from a

4

cosmetology school but never earned her license.  She was divorced with two sons, ages 24 and 13.  Her boyfriend was living with her to take care of her after her surgery, and she was living on child support, food stamps, and Medicaid.  She told Dr. Leach that she quit working at Lowe's for medical reasons after undergoing fourteen surgeries in two years.  She also said that she was unable to work because of her current medical condition and because of depression.  She reported her current medical problems as being fibromyalgia, headaches, back and neck pain, and irritable bowel syndrome.  She denied problems with her employers, although she conceded that she had a problem with tardiness.  She was currently undergoing physical therapy and would soon start water therapy.  She denied past or present drug abuse.  Hayes reported trouble maintaining personal hygiene and completing household chores, and she reported no daily activities other than sleeping and reading.  She also reported no ongoing social contacts.

Dr. Leach observed that Hayes's hygiene and appearance were good and that she was responsive and cooperative.  Hayes's speech was average in rate, rhythm, and volume, and her thought processes were organized, coherent, appropriate, and detailed.  Dr. Leach found, however, that Hayes had blunted affect, and Hayes reported depression, irritation, and daily crying spells.  Hayes cried during the interview.  Hayes admitted thinking non-specifically about hurting herself, although she denied suicidal ideation.  She reported sleeping badly and having little energy or motivation. She denied hallucinations or other psychotic symptoms and exhibited no signs of thought disorder. There were also no signs of any cognitive deficit.  Insight and judgment were adequate, and Hayes asserted that she was compliant with her medications and medical

appointments.

Dr. Leach diagnosed Hayes as suffering from a major depressive disorder and assigned her a Global Assessment of Functioning ("GAF") of 56.[1]  He opined that Hayes was moderately impaired in her ability to relate to others and in her abilities to maintain attention, concentration, persistence, and pace and to perform simple repetitive tasks. He also opined that she was moderately impaired in her ability to withstand the stress and pressures of day-to-day work activities.  She was, however, able to manage her own funds, and Dr. Leach did not find her to be otherwise impaired.

On July 9, 2005, Hayes visited Dr. Chaitoff complaining of diffuse pain in her extremities, shoulders, and low back.  Tr. at 207.  Dr. Chaitoff diagnosed her as suffering from fibromyalgia.  Hayes also complained that a sponge had been left inside her during her recent surgery.  Dr. Chaitoff remarked, "I have no proof that her claim is valid."  Tr. at 207.  Hayes was treated for urinary tract infections and subsequently reported that the pain in her bladder was gone.  Tr. at 192.  An MRI showed normal results.  Hayes reported continuing pain in her legs, but she was able to reduce the amount of pain medication she was taking.

On July 28, 2005, Dr. Goldman completed a report on Hayes's condition at the request of the Bureau.  Tr. at 208-10.  He reported that Hayes had suffered from a foreign body in her bladder and urinary incontinence, the result of a suture left in her bladder by surgery in 2001.  Dr. Goldman removed the suture surgically.  According to Dr. Goldman, Hayes was not prescribed any medications or therapy related to her

---

[1]  A GAF of 50 to 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.

surgery, nor did she suffer any limitations resulting from the surgery.  He also reported that no compliance issues had interfered with treatment.

Tonnie A. Hoyle, a psychiatrist, completed a Mental Residual Functional Capacity Assessment ("MRFCA") and a Psychiatric Review Technique ("PRT") of Hayes on August 23, 2005.  Tr. at 211-26.  Dr. Hoyle opined in the MRFCA that Hayes was moderately limited in the following:  (1) her ability to understand and remember detailed instructions; (2) the ability to carry our very short and simple instructions; (3) the ability to carry out detailed instructions; (4) the ability to maintain attention and concentration for extended periods; (5) the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (6) the ability to work in coordination with or proximity to others without being distracted by them; (9) the ability to make simple work-related decisions; (10) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (11) the ability to interact appropriately with the general public; (12) the ability to get along with coworkers without distracting them or exhibiting behavioral extremes; (13) the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; (14) the ability to respond appropriately to changes in the work setting; and (15) the ability to set realistic goals or make plans independently of others.  Dr. Hoyle found no other significant limitations and concluded in part:

> 45 year old claimant alleges depression with anger, daily crying spells, sleep disturbances, reduced concentration, low energy and little motivation.  She says that there are many days that she does not get dressed and has limited social

7

interactions.  She alleges to have had 14 abdominal surgeries since 2001.  This is not supported by the medical evidence available.  A stitch that was left from a previous surgery was removed in 2/05.  She claims a sponge was left inside her, but there is no evidence to support that. . . .

Clt appears to retain the ability to perform simple, repetitive tasks in a relatively static environment and where she has limited contact with others.

Clt's statements are not totally consistent with the medical evidence and seem to be partially credible.

Tr. at 213.  Dr. Hoyle believed that Hayes retained "the ability to perform simple, repetitive tasks in a relatively static environment and where she has limited contact with others."  Tr. at 213.

On September 2, 2005, Hayes again visited Dr. Chaitoff.  Tr. at 244.  Hayes complained of pain in her arms, legs, thighs, neck, and back.  Liver function tests were slightly elevated.  Hayes revealed that she had thrown her boyfriend out of the house because he wasn't working and that she smoked marijuana at home.  Dr. Chaitoff assessed Hayes as suffering from fibromyalgia syndrome, high cholesterol, and hepatic steatosis.  He recommended exercise and weight loss.  On October 25, 2005, He sent Hayes a letter terminating their patient-doctor relationship, writing, "Due to differences of opinion in your case, I feel that it would be in your best interest to find another practice and a new physician."  Tr. at 239.

Dr. Goldman referred Hayes to John Heather, M.D., for further treatment, and she saw him upon admission to Laurelwood Hospital for psychiatric care on September 20, 2005.  Tr. at 227-31.  Her symptoms included various complaints of pain, fatigue, stress, and recurrent infections.  She admitted using marijuana to relieve pain.  Dr. Heather diagnosed Hayes as suffering from chronic adjustment disorder with mixed

8

features, a psychological and physical somatic pain disorder, cannabis abuse, possible

fibromyalgia, and moderate to severe stress.  He assigned her a GAF of 45-50.[2]  He

concluded in relevant part, however:

> It is not clear that this patient has a primary psychiatric disorder at all.   In fact,
> she probably will not need medication adjustments, given the fact that I do not
> feel she is clinically depressed at this time, but could meet the criteria for an
> adjustment disorder.  I have to consider the possibility that this patient may be
> malingering since there is certainly secondary gain in the forefront, including
> apparently a lawsuit against one of the surgeons who worked on her
> hysterectomy and bladder repair as well as trying to get Social Security Disability
> as well as multiple mentions of not getting enough money from the fathers of her
> children . . . .

Tr. at 230.

Hayes visited Thomas Svete, M.D., on November 9, 2005 for a psychiatric

assessment.  Tr. at 360-61.  Hayes described her symptoms as excessive sleeping,

chronic pain and occasional radiating pain, frequent infections, and migraines.  Dr.

Svete found her to be tired and fatigued, in disarray, coherent, cooperative, with

superficial affect, and having intact cognition.  He diagnosed Hayes as suffering from a

somatization disorder, an unspecified mood disorder, a pain disorder with psychological

and physical components, marijuana abuse, a learning disability, borderline traits,

multiple chemical sensitivities, migraines, fibromyalgia, and other problems.  He

continued Hayes's current medications and opined that she might benefit from an anti-

psychotic medication.

On February 22, 2006, Hayes was admitted to the Geauga Regional Hospital for

two days due to depression with suicidal ideation resulting from pain related to

---

[2]  A GAF of 41-50 indicates serious symptoms or a serious impairment in social
occupational, or school functioning.

9

fibromyalgia, poor health, and financial difficulties.  Tr. at 497-505. One of the consulting physicians believed that Hayes was taking too much analgesic medication.  Hayes admitted using marijuana, and laboratory tests were positive for PCP.  She was diagnosed as suffering from a major recurrent depressive disorder accompanied by multiple medical problems, chronic pain, financial problems, physical disability, and a limited support system.  She was assigned a GAF of 40.[3]  "After 2 days of hospitalization, she stated that she was disappointed that she was not receiving intensive individual psychotherapy to figure out her life's problems.  Subsequently, she was requesting to be discharged."  Tr. at 497.  After Hayes asserted that she no longer felt suicidal and would follow up with Dr. Svete and her counselor, Kelly Christie ("Cristie"), Geauga Regional Hospital discharged her.

Hayes visited Dr. Svete on January 4, 2006.  Tr. at 362-64.  He found her to be distraught but making light of her feelings.  The doctor emphasized the importance of processing unresolved grief and avoiding repression.  He also believed that a low dose antipsychotic might be beneficial. Later visits with Dr. Svete, tr. at 365-82, revealed anxiety, dysphoria, occasional suicidal ideation without suicidal intent, occasional incontinence, periods of acute depression, and periods of improvement.  Lapses into depression were often preceded by a failure to take one or more medications, sometimes because of perceived side effects of those medications.  During periods of improvement, she sometimes rode a bicycle with her son.  Hayes reported chronic pain,

---

[3]  A GAF of 31-40 indicates some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, or thinking.

10

frequent headaches, and resort to extended periods in bed when depressed.  Cognition, thought content, and concentration remained fair to good.  Dr. Svete eventually diagnosed Hayes as suffering from bipolar disorder.  He recommended exercise and tried various combinations of anti-dpressants and analgesics, including Effexor, Mobic, Geodon, Klonopin, Amitriptyline, Cymbalta, Wellbutrin, Abilify, and Topomax.  On February 5, 2007, Dr. Svete noted, "Overall she's doing quite well.  Her mood has been stable and content.  There's minimal anxiety.  Her sleep has been well preserved. She's more active, involved and optimistic."  Tr. at 382.

Christie counseled Hayes from March 2007 through April 2008.  Tr. 448-91. During this course of counseling, Hayes began exercising, established a regular exercise regime, and experienced increases in energy and decreased depression, although there was some regression in her mood and energy level at the end of this period.  Hayes also admitted smoking marijuana every day at one point in her treatment.  Tr. 483.

On May 1, 2008, Dr. Svete wrote to the following letter, addressed "To Whom It May Concern":

> This letter is in regards to Susan Hayes . . . [She] has been receiving services under my care . . . since March 5, 2007 and is diagnosed with Mood Disorder N.O.S. (Probable Bipolar Disorder), Pain Disorder with Psychological and Physical Factors.  In my opinion, Susan Hayes is totally and permanently disabled.

Tr. at 439.

C.    *Hearing testimony*

At the hearing on June 19, 2008, Hayes testified that she suffered primarily from depression and pain.  Tr. at 567.  She also testified that she slept 12-14 hours a day,

11

did not always get dressed, left the house about once a week for counseling, and sometimes went out a second time to go grocery shopping.  Tr. at 569-70.  She asserted that on good days she could do laundry and cook, but on bad days could do nothing.  Tr. at 569.

Hayes described her pain as in her knees, hips, and neck, accompanied by a general feeling of fatigue.  Tr. at 570.  According to Hayes, the pain limits her in some respects, such as getting her pants on or painting her toenails.  She stated that she swam at the YWCA three times a week.  Tr. at 570-71.  Hayes estimated that she was able to sit for about a half hour before having to get up and stretch and stand or walk for about 20 minutes before her feet started to burn.  Tr. at 571.  She also estimated that she could lift about 20 pounds.  Tr. at 571.  Hayes testified that she drove two miles at a time, did little housework, did not pursue hobbies, and rarely went out.  Tr. at 579-80.  She denied using drugs other than prescription drugs, but later admitted past use when questioned about it by the ALJ.  Tr. at 580, 588-89.

The ME opined that Hayes had no physical limitations related to fibromyalgia and that she needed to build up to more challenging exercises as part of her physical regimen.  Tr. at 583.  As a consequence of her depression, the ME also opined that Hayes should be restricted to work without production quotas, and no more than superficial interpersonal interaction with co-workers, supervisors, and the general public.

The ALJ asked the VE to assume an individual with the Residual Functional Capacity ("RFC") to perform light work with a sit/stand option.  He asked if such an individual could perform claimant's past relevant work, and the VE said that the person

12

could not.  Tr. at 592.  The VE said, however, that such an individual could perform other jobs existing in the local, regional, or national economy.  These jobs included beverage order clerk and information clerk/telephone quotation clerk.  When the ALJ added a requirement that the individual perform simple tasks in a low-stress environment and limited contact with others, the VE again opined that such an individual could not perform Hayes's past relevant work but could perform the jobs of beverage order clerk and information clerk/telephone quotation clerk.  Tr. at 592-93.  When asked if such an individual could perform any jobs in the local, regional, or national economy if the individual would miss up to five days of work in a 30-day period, the VE opined that the individual could not perform any jobs.  Tr. at 593.

### III.  Standard for Disability

A claimant is entitled to receive benefits under the Act when she establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a).  To receive SSI benefits, a recipient must also meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second,  the claimant must show that she suffers from a "severe impairment"

13

in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000).  Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled.  For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

## IV.  Summary of Commissioner's Decision

In determining that Hayes was not disabled, the ALJ made the following findings:

1.  The claimant meets the insured status requirements of the Social Security Act through March 31, 2010.

2.  The claimant has not engaged in substantial gainful activity since February 2, 2005, the alleged onset date . . . .

3.  The claimant has the following severe impairments:  depression; pain disorder; fibromyalgia; chronic fatigue syndrome, and high cholesterol . . . .

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in  20 CFR Part 404, Subpart P, Appendix I . . . .

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than light work with a sit/stand option at will and the claimant is limited to simple, one/two step work which has low stress and superficial interaction with supervisors, co-workers and the public. . . .

14

6.      The claimant is unable to perform any past relevant work . . . .

7.      The claimant was born on July 6, 1960 and was 44 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date . . . .

8.      The claimant has at least a high school education and is able to communicate in English . . . .

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills . . . .

10.     Considering the claimant's age education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform . . . .

Tr. at 16-20.

## V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the administrative law judge's findings of fact and whether the correct legal standards were applied.  *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

15

VI.  Analysis

Hayes alleges that the ALJ erred because (1) the ALJ erroneously found Hayes not to be credible; and (2) the ALJ failed to give controlling weight to the opinion of Hayes's treating physician.

A.      *Whether the ALJ erred in finding Hayes not to be credible*

Hayes argues that the ALJ erred because the ability to engage in household activities does not, of itself, constitute substantial evidence that a claimant is able to engage in substantial gainful activity and because, in the case of fibromyalgia, a claimant my not be discredited because her subjective complaints are not fully supported by objective medical evidence.[4]  Hayes cites  *Brosnahan v. Barnhart*, 336 F.3d 671 (2003), in support of her argument.  The Commissioner denies that the ALJ's determination that Hayes was not fully credible was erroneous.

In finding Hayes not to be credible, the ALJ wrote the following:

> The claimant alleges that she is disabled by her pain in her neck, back and shoulders.  The claimant indicated that she can only sit for one half hour before she must stand.  She stated that after standing and walking for twenty minutes, her feet begin to hurt and burn. She also has complaints [sic] of marked fatigue.  The evidence establishes that she has been diagnosed with fibromyalgia and chronic fatigue syndrome. The evidence indicates that the claimant has undergone multiple abdominal and bladder surgeries since 2001 including a hysterectomy.  Physical examinations have noted tender points, but there is no joint deformity or effusion.  She has full range of motion of the lumbar spine and hips.  Reflexes, sensation and muscle strength are all normal.  Her gait is also noted to be normal.  She has been treated with physical therapy, including aquatic therapy for her complaints.  She has also been prescribed Darvocet and Mobic.  The claimant indicated at the hearing that she is able to drive, can do the cooking and cleaning with the help of her son and watches television.  Such

---

[4]   Hayes goes further and concludes that the ALJ's remarks were intended to discredit Hayes's allegations of fatigue.  The court does not read the ALJ's conclusions regarding Hayes's credibility as necessarily related to her allegations of fatigue.

evidence establishes that while claimant has a condition which would reasonably be expected to produce pain, it would not be of disability severity.

Tr. at 19.

Hayes argues first that the ALJ erred in considering objective medical signs in determining that Hayes's allegations of pain were not credible.  In *Brosnahan*, the Sixth Circuit noted that, in the case of fibromylagia, "the ALJ may not discredit a claimant solely because her subjective complaints are not fully supported by objective medical evidence."  *Id.* at 677-78.  In particular, fibromyalgia is not a disease that may be evaluated by looking for abnormalities in the musculoskelal system:

> Fibromyalgia is a "nonarticular" rheumatic disease ("The Merck Manual" (1369, 16th ed. 1992)), and objective impairment of musculoskeletal function, including limitation of motion of the joints, is not present, in contrast to the usual findings in "articular" rheumatic diseases.  Joint examinations in fibromyalgia are necessary only to exclude other rheumatic diseases because physical signs other than tender points at specific locations are lacking.  The pain of fibromyalgia is not joint pain, but a deep aching, or sometimes burning pain, primarily in muscles, but sometimes in fascia, ligaments, areas of tendon insertions, and other areas of connective tissue (Ball and Koopman, 315).  The evaluation criteria require that the pain be widespread, and that the symptoms be assessed based on whether they are constant or episodic, or require continuous medication, but they are not based on evaluations of individual joints or other specific parts of the musculoskeletal system.

64 FR 32410, 32411 (June 17, 1999).  The Sixth Circuit adds, "[U]nlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs.  Rather, fibromyalgia patients 'manifest normal muscle strength and neurological reactions and have a full range of motion.'"  *Rogers v. Commissioner of Social Sec.*, 486 F.3d 234, 243-44 (6th Cir. 2007) (footnote and citations omitted).  Thus, the ALJ's statements regarding joint deformity, effusion, range of motion, reflexes, sensation, and muscle strength are irrelevant to determining

17

whether a claimant's subjective assertions regarding pain are credible.  The ALJ erred in considering these objective medical signs to determine that Hayes's allegations of pain were not credible.

Hayes also notes that in *Brosnahan* the Sixth Circuit wrote, "[W]e have held, in the context of a fibromyalgia case, that the ability to engage in activities such as cooking, cleaning, and hobbies, does not constitute substantial evidence of the ability to engage in substantial gainful activity."  *Brosnahan*, 336 F.3d at 677.  From this, Hayes concludes that the ALJ's findings regarding pain and fatigue were not justified, therefore, by the mere observation that Hayes was able to do some household chores.  More to the point, however, Hayes made clear, both to her doctors and in her testimony before the ALJ, that her ability to drive, cook, and clean is limited and varies as her condition worsens or improves, qualifications that the ALJ ignored in his summary.  The symptoms of fibromyalgia may vary in their intensity.  *See, e.g., Brosnahan*, 336 F.3d at 677.  That Hayes is able to perform some chores on some occasions does not necessarily undercut the credibility of her assertions that her pain generally precludes substantial gainful employment.

The Commissioner requires a particular analysis in determining whether a claimant's allegations of pain are credible in cases of fibromyalgia.  The Sixth Circuit summarizes these requirements as follows:

> Whenever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record." The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record.

18

Consistency of the various pieces of information contained in the record should be scrutinized.  Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect.

Social Security Ruling 96-7p also requires the ALJ explain his credibility determinations in his decision such that it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." In other words, blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence.  And given the nature of fibromyalgia, where subjective pain complaints play an important role in the diagnosis and treatment of the condition, providing justification for discounting a claimant's statements is particularly important.  *Hurst v. Sec'y of Health & Human Servs.,* 753 F.2d 517, 519 (6th Cir.1985).

*Rogers v. Commissioner of Social Sec.*, 486 F.3d 234, 247-48 (6th Cir. 2007) (footnote omitted).  Social Security Ruling 96-7p elucidates particular factors that should be considered in addition to the objective medical evidence when assessing an individual's credibility:

1.  The individual's daily activities;
2.  The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3.  Factors that precipitate and aggravate the symptoms;
4.  The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
5.  Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
6.  Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7.  Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*See also* 20 CFR §§ 404.1529(c), 416.929(c).

In the instant case, the ALJ failed to perform the analysis required by Social Security Ruling 96-7p and relied on objective factors not relevant to Hayes's condition.

19

The ALJ also failed to explain his credibility determinations adequately, relying instead upon blanket assertions that the claimant's allegations of pain are not credible.  Finally, the ALJ failed to note claimant's testimony regarding the limits on the activities she is able to perform.

Credibility is the sole province of the ALJ.  *Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997).  As the ALJ has failed to perform a proper analysis of the credibility of Hayes's allegations of pain, the case must be remanded to the ALJ for a proper analysis.[5]

B.    *Whether the ALJ erred in failing to give controlling weight to the opinion of Hayes's treating physician*

Hayes argues that the ALJ erred in failing to give controlling weight to the opinion of her treating physician, Dr. Svete, that she was totally and permanently disabled.  The Commissioner replies that the ALJ properly accorded little weight to this opinion.

The opinion of treating physicians should be given greater weight than those of physicians hired by the Commissioner.  *Lashley v. Secretary of Health and Human Servs.,* 708 F.2d 1048 (6th Cir. 1983).  This is true, however, only when the treating physician's opinion is based on sufficient objective medical data and is not contradicted by other evidence in the record.  20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3); *Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1370 & n.7 (6th Cir. 1991); *Sizemore v. Secretary of Health and Human Services*, 865 F.2d 709, 711-12 (6th Cir.

---

[5]    The ALJ is also reminded that, having found that Hayes suffers from chronic fatigue syndrome, the analysis of the severity of Hayes's symptoms arising from that impairment should be guided by Social Security Ruling 99-2p, which clarifies disability policy for the evaluation and adjudication of disability claims involving chronic fatigue syndrome.

1988).  Where there is insufficient objective data supporting the opinion and there is no

explanation of a nexus between the conclusion of disability and physical findings, the

factfinder may choose to disregard the treating physician's opinion.  *Landsaw v.*

*Secretary of Health and Human Servs.,* 803 F.2d 211, 212 (6th Cir. 1986).

In determining Hayes's RFC, the ALJ first assessed Hayes's credibility, as

described above.  He then wrote as follows:

> [T]his evidence establishes that the claimant retains the residual functional
> capacity to perform less than light work with a sit/stand option at will and the
> claimant is limited to simple, one/two step workwhich is low stress and with
> limited and superficial interaction with supervisors, co-workers and the public.
> This finding is supported by the opinion of the claimant's treating physician,
> Jeffrey Chaitoff, M.D. who indicated on July 9, 2005 that the claimant was
> capable of walking, standing, sitting and carrying light objects.  While Dr. Svete
> indicated on May 8, 2008 that the claimant is totally and permanently disabled,
> he based his opinion on the claimant's mental impairments and as noted above,
> the evidence establishes that the claimant is not disabled by her mental
> impairments.

Tr. at 19 (citations omitted).  The evidence "noted above" consisted of the ALJ's

analysis that Hayes did not meet or equal the listings at 12.04 or 12.07.  Having

reached that conclusion, the ALJ further concluded that the only limitations imposed by

Hayes's mental impairments are that she is limited to simple, low stress, one or two step

work with no high production requirements and is limited to limited and superficial

interaction with supervisors, co-workers, and the public.  The ALJ did not explain the

basis for these additional conclusions.

In setting aside Dr. Svete's opinion, the ALJ stated that because Dr. Svete's

opinion was based on Hayes's alleged mental impairments and because Hayes was not

mentally disabled, Dr. Svete's opinion that Hayes was disabled was erroneous.  This

does not completely and accurately set forth the record.  Dr. Svete's opinion was as

follows:

> This letter is in regards to Susan Hayes . . . [She] has been receiving services under my care . . . since March 5, 2007 and is diagnosed with Mood Disorder N.O.S. (Probable Bipolar Disorder), Pain Disorder with Psychological and Physical Factors.  In my opinion, Susan Hayes is totally and permanently disabled.

Tr. at 439.  Thus, Dr. Svete's opinion that Hayes was disabled was based only in part on Hayes's mental disabilities.  In rejecting Dr. Svete's opinion, the ALJ failed to consider Hayes's pain disorder and failed to consider its interaction with Hayes's mental limitations.  The court reaches no conclusion as to whether Dr. Svete's opinion was, indeed, entitled to deference.  What the court does conclude, however, is that the ALJ's stated ground for rejecting that opinion was inadequate because it was based on an erroneous reading of the record.

The Commissioner argues that Dr. Svete's opinion was not entitled to deference because it is in conflict with the residual functional capacity implicit in Hayes's own statement of her functional limitations at the hearing.[6]  The Commissioner errs.  Hayes's testimony sufficiently established an RFC for sedentary work (and possibly light work) with a sit/stand option at will, plus the other limitations determined by the ALJ.  What the ALJ persistently ignored in determining that Hayes was not disabled was Hayes's ability to maintain work on a daily basis.  As the record is replete with references to the varying nature of the seriousness of Hayes's mental and physical symptoms, the absence of such an analysis is inexplicable.  This is a particularly serious deficiency in light of the

---

[6]  The Commissioner's brief contains other arguments in support of the ALJ's decision.  The court does not reach any decision regarding the merits of these arguments because they were not advanced by the ALJ.  *See Municipal Resale Serv. Customers v. Federal Energy Regulatory Comm'n*, 43 F.3d 1046, 1052 (6th Cir. 1995).

VE's testimony that if Hayes is incapable of working for a month without missing up to five days' work there are no jobs existing in significant numbers in the economy that she can perform.  Given these deficiencies in the ALJ's analysis, her decision not to give Dr. Svete's opinion controlling weight was not supported by substantial evidence.  The ALJ must reconsider this decision in light of *all* the evidence in the record and to explain her decision sufficiently to allow a meaningful opportunity for review.

VII.  Decision

For the reasons given above, the court VACATES the decision of the Commissioner and remands the case for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**


Date:  February 23, 2010                    s/ Nancy A. Vecchiarelli
                                            U.S. Magistrate Judge

23